Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Bouie presiding along with Justice Moore and Justice Vaughn. The first two cases this morning are 521-0408 Pura Vida Holdings, Inc. v. Reimer and 521-0409 Reimer et al. v. Pura Vida Holdings, Inc. et al. Arguing for the appellants, Judy Reimer, Dennis Reimer, and Douglas Reimer is William Farr. Arguing for the appellate, Pura Vida Holdings, Inc., David Reimer, and Donald Reimer is Brian Eck. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning, Your Honor. We're sorry we were running a bit late. We appreciate your patience. We have a lot of cases on the docket this morning, and I believe these two cases are going to be argued together. Is that correct? Yes, Your Honor. Okay, and I think, Mr. Farr, you'll go first? Yes, Your Honor. Then go right ahead. Thank you. May it please the court, and it's already been indicated I apologize, but my name is William Farr, and I am the attorney for Doug and Dennis Reimer in 13-CH8 and Judy Reimer in 12-CH58, and also, as indicated, the argument will be the same in both. This case comes before the court on appeal as a matter of right for the trial court's order entered. Getting directly to the issues, the first issue discussed in the briefs was whether the court erred in the motion for disqualification, and the standard of review in that is an abuse of discretion. The situation arises, and it is, I think, I've been taught as long as I've been practicing law that the burden on determining a conflict and or avoiding a conflict is on the lawyer, not the client, and this is the reason for that is that the lawyer is in a superior position to determine whether there is a conflict, and as a professional, more educated, more experienced in areas of the law, that they have an obligation to clients that rises above what the client has to them in the realm of conflicts. The client's impressions and understanding and analysis of everything or what are important in these cases. In this situation, there was early on an indication that James Reimer, not a party, but the spouse of Judy Reimer, had met with a lawyer in the office of and to discuss some unrelated to these issues, but there was, we believe that indicated there had been a prior relationship between the firm and the Reimers, specifically James Reimer, and the burden to disclose the conflict of interest is also on the lawyer, and in this situation, what we are wrote or argued in the brief, and I'd like just briefly argue now, I think the court misinterpreted that, and the obligation to recall or not commit, but to advise the court there was a conflict wasn't really the client's, it was the law firm, and as I said, lawyers are held to a higher standard. The second issue is what are the trial court erred in failing to consider Ed Heck's deposition contents or the transcript as proof of the value of the 18 acres, which was the subject in 12 CH 58. Now, the thing that makes that a little bit more palatable is the fact that Ed Heck's transcript was admitted by stipulation, so there was an agreement between myself and an agreement also with counsel that that would be admitted. Now, stipulation, I think it's understood, and I believe the case of Opfer pretty well mandates that, that a stipulation means that the interest and the contents of what is stipulated to can be admitted for the court to use in any way it sees fit, and I think the reason for that is there is perhaps the chance of judicial expediency, less testimony, less witnesses, and maybe getting to the core of the issues, and the situation with this is the record shows there were no caveats, conditions, terms, anything else that prevented the stipulated exhibit from being used for the purpose of determining the value of the 18 acres, which stated in the transcript or in the deposition transcript is $670,320, and that's the figure that we used in our calculation of the damages, and I will get to that later. The court in Opfer did say that Illinois courts favor voluntary settlements, and I include stipulation in that, and litigants are bound by them regardless of how unwise they may seem in retrospect unless they're grossly unfair or unconscionable. The trial court in this situation approved it, accepted it, and then had the capability of using anything in the transcript. The third issue is whether the court, and it's quite a bit more broad, erred in ruling in favor of the defendant in 13 CH8. This is a situation I, what small amount of appellate practice I have, I've never been able to argue the burden of proof, but in, or standard of proof, excuse me, but in this situation, the standard of review is against the manifest weight of the evidence. The court, the trial court, we don't believe understood that Donald needed those guarantees to get the loan, so Doug and Dennis both put themselves out on a financial limb, if you will, in order for Donald to be able to do that. Now, the court mentions that the guarantees for a one-third interest to Doug, Douglas, and a one-third interest to Dennis was not something that was necessary or should be considered. They said that the guarantees were executed by the two of them based upon the family relationship. Now, our argument on that is it would be $223,440 for Douglas and for Dennis of the assets that should have been transferred into Pura Vida from RDI. Now, the guarantees would have been all of the amount of the $670 plus. They are brothers. I think we acknowledge that in the record, but there comes a point that the family relationship doesn't count as much as the financial damages. And the fourth issue is whether the court erred in ruling in favor of the defendants in 12-CH-58. Again, this standard of review is against the manifest weight of the based upon early gift over or part of his inheritance, at least from his mother. Donald speculated, he had nothing to base it on, but speculated that his rule, or excuse me, the transfer was due to pay off some obligation Doug had made. Now, we also have the issue of Oldfield tied in with this as well, that he didn't perform his due diligence when he did arrange to allow Jim and Judy and excuse me, Jim and Judy and Doug and Dennis to have an interest in Pura Vida when that was changed over because it had lapsed in its good standing and they went to Oldfield. Oldfield didn't check on anything with the state other than he looked at the file, but he didn't contact anyone listed, not the agent, not the actual president or any of the officers that might have been listed. Oldfield, by his own admission, was a lawyer with extensive background in the business organization and business administration. And in this case, he simply failed in his duties to the primers that went to see him in that regard. Thank you. Justice Moore, Justice Vaughn, do you have any questions? Yes, I respond, counsel, to the fact that they had noticed for what was it, five years and eight months, and that nothing was brought up until the end of the first day of trial. Yes, I can, your honor. Thank you. And we believe that they might have have known or had some knowledge, and I think that's a part of the brief, but there wasn't any proof that there was the conflict until they saw the document that was presented by Mr. Eck. And then a bell went off in Doug's head, for lack of a better phrase, that look, there's an issue here and now we have proof that Mr. Eck represented us. And that ties in with what I said. It's what the client's impression is and the client's analysis of the problem as to what is important in the determination of the I believe, and my clients believe, that the time was not an issue. If the conflict existed, we could have found it five years after we did find it, and it still would have been a blatant conflict, your honor. And Judge Seamer found that that was a long time and one of the bases of his decisions. Is that right? Yes, it is, your honor. And according to the brief of the Capoli, there was a lot of litigation going on between these parties. There were something like 20 cases, is that correct? Yes, your honor. And was Mr. Eck involved in all of those? It's my understanding from the beginning on behalf of the various clients I have, had been through several attorneys, I think at least four at my last count, your honor. So he represented the same parties throughout all of those 20 cases? Yes, your honor. And I know Justice Bond was going to ask a question, but I'm going to dovetail on what Justice Moore, but doesn't all of that, what was just assessed, also go to the fact about prejudice, if the disqualification would be allowed. If they've been involved in this litigation for so many years, have to go get a new attorney. I mean, we're looking at another six months, one year, two years, depending on how long it would take a new attorney to get on board and get up to speed, so to speak. Yes, your honor. I understand that. But the harm, I think my analysis of that is the harm to my and Donald Reimer to cover himself and his expenses outside of the aggravation that have, I don't want to say successful and prejudge, but he has the right to file a malpractice claim against his attorneys that exist now. That's my interpretation. Thank you. Justice Bond. I think my questions kind of dovetail with the questions you've already asked. My understanding is there are five factors to consider under the estate of KLEHM, K-L-E-H-M, and those factors are the length of the delay and bringing the motion that's qualifying, as Justice Moore pointed out, it's over five years. When the movement learned of the conflict, and it seems to have been some time ago, whether the movement was represented by counsel during the delay, and they've been represented the whole time, why the delay occurred, I'm not sure we have an answer to that, why it occurred. And then the fifth factor is not what would happen to the moving party, but where the disqualification result in prejudice to the non-moving party. So the test to me seems to be what would the effect would be on the other side. So how do you respond to those five factors? Well, and I hate to inject my worldview into my argument, but I think money solves everything. So if Donald had the malpractice case against that firm, and they came up with the damages, his attorney fees, and any, you know, cost and fees and depositions and everything else, he wouldn't probably, it wouldn't be a perfect position to be in, but he would be back to the same position. And then the same arguments with a new firm. So for lack of a better phrase, maybe it was a trial run on the case. But I think in this situation, any monetary damages would solve any prejudice too Donald. Thank you. You're welcome. Any follow up Justice Moore? No. Well, Mr. Farr, obviously you'll be given your opportunity for rebuttal after we hear from Mr. Eck. Thank you. Go right ahead. May it please court and counsel Brian Eck on behalf of the Apple ease. In the two cases, we have the fraud case. I have Don Reimer in that and we have the quiet title case and I have pure Vita in that. I'm going to just follow Mr. Farr's kind of 1234 on this. Starting with the question of disqualification, I think from the review of the record, the court is probably very familiar with my belief that the disqualification motion was specious to begin with. We filed a motion for sanctions on it because it was both without good faith basis and was supported by doctored instruments. Just so we're clear, the notion that this firm represented, I believe it was Douglas Reimer who asserted it on the stand, is wholly denied. But rather than have another trial within a trial, we reduced the question merely to on summary judgment, is there any way that the court could find that this delay was excusable? And Judge Seamer appropriately found no, there is no way. The arguments that have been advanced for the reason behind the delay have just no basis in reality. The notion that there wasn't any proof that this purported conflict would exist, even if you grant for the sake of argument that it does exist, the basis for the allegation of conflict arose on the stand at the end of day one of trial, where Mr. Reimer said, well, I thought you represented me at that point. As I've put in my brief and identified specifically the exhibit at issue, he's claiming that there was some relationship related to a document that was executed in 2012, 2011. And I believe Judge Seamer's decision was, let's start the tack running from the first time that my office entered its appearance in 2013 CH8 or 2012 CH58. Either one gets you to about five and a half years, which as the Clem case and the court's detailed opinion states, you know, there's just too many actions, too many lawyers, too many years have passed for this. Even if you assume everything else is true, which we reject, but even if you assume that they had a good faith basis to say that there was a conflict, the delay is just simply both inexcusable and completely unexplained. And the prejudice is just manifestly off the charts. I mean, these people have been involved in 20 odd cases between each other. What would happen? Would they all have to be vacated and have to re-litigate everything from 2011 to the present? It's taken us a decade, it's taken us three calendar years to get three days of trial done. So that said, I believe that the court was absolutely correct in granting the motion for summary judgment on the disqualification issue. There is no inference one can find and no contrary testimony was offered or admissible evidence offered by the non-moving party to suggest that there was any explanation for the delay whatsoever. So I think the trial court got that question 100% correct. Then moving on to point two, we're talking about Pura Vida's quiet title case to that 18 acres. There's an alleged error of failing to consider Ed Heck's deposition really touches on the value of the 18 acres, but even if it does, I don't see how it has any bearing on whether or not the quiet title elements were met. No contrary evidence was offered at the trial court level to suggest that Judy had an innocent motive in transferring this into Pura Vida Corporation. In fact, the court specifically found all of the evidence suggests that it was part of an ongoing scheme between her and her husband to usurp control of these acres. We did admit Ed Heck's deposition in the exhibits by stipulation. We didn't stipulate to any facts in it. And in any event, Mr. Heck wasn't proffered or disclosed as an F3 expert. So the question of evaluation, the question of valuation of the 18 acres is not at issue one and two, Ed Heck didn't opine on it. And three, he wasn't disclosed to opine on it anyway. That also kind of dovetails into point four, if the court will permit me to jump a bit. Judge Seamer at very great length considered every possible way that you could get to a damages question in this case, and none of them got there. There's no good admissible evidence to show damages, even if they had managed to put evidence on sufficient to meet preponderance on the other elements of fraud. But there's just no basis to calculate damages. There's nothing out of pocket. There's no adverse employment action. And the damages that they claim are based on looking through a keyhole at this question. I mean, as Judge Seamer said, we don't know what was Reimer Developments, what was Jim Reimers, what was Judy Reimers, what was supposed to have value. And then there's one layer on top of that, which is what were the value of the shares based on that. There's no F3 expert to tell you what the fractional value discount was, what an insider discount was, how do you account for the debt. So the fatal point, even though the court found against the Reimer plaintiffs in the fraud action on every one of their points that required credibility, the judge also found that there was just no basis to comprehensively calculate damages. None was offered, none was stipulated, and none can be found in Ed Heck's deposition. And then as to point three, I think the court on the fraud claim was absolutely correct that there just wasn't enough evidence there to get any single one of the points, even on a preponderance of the evidence standard. You can't even show that there was a statement made who made it. The judge, I think, may have believed that if anybody was talking about this kind of thing, it was Jim Reimer, the father behind all of this, not my client, Donald Reimer, who has claimed to have said five or six different permutations over the years. I mean, the court made a good credibility finding. In the 10 years this case has been pending, I think there's been a four, five, counting the brief, total different methods or total different statements that the this. They were just not credible on the stand. The court found that way. There was the court's decision to deny the fraud claim was certainly consistent with the manifest weight of the evidence. Likewise, the court's decision to grant Pura Vida's quiet title action and declare the land in Pura Vida's name was consistent with the only evidence deduced at trial. I mean, the glaring hole in this case is why didn't Jim testify? Why didn't Judy testify? The people who would know why this happened refused to come into court to say why it happened. So the only inference the court was left with is that it was fraud or malice. Thank you, Your Honor. Thank you, Mr. Justice Moore or Justice Bond. You have any questions? No questions. All right. Thank you, Mr. Mr. Far. Any rebuttal? Just briefly, if I might, I think the fraud was in not fraud in the inducement, but the fraud arose when Donald made the promises of the one third to Doug and one third to Dennis interest in Pura Vida, as I said, which was to take the assets of RDI. So in that situation, there was a fraud. I think in this case, as I said, to argue the standard of review, odd. But I think in this situation that the judge didn't quite his ruling was against the manifest way to the evidence. We believe the fraud elements were found. There were damages. Damages were determined. And we believe that there was a fraud and that this should be reversed, at least on those grounds. Thank you. I yield back the balance of my time. Thank you, Mr. Far. Any final questions? Justice Moore, Justice Bond. Any particular evidence you'd like to point to that it's overcomes the manifest rate? No, your honor, just my argument. I think the way the judge interpreted some of the things as we said that Donald speculated why the deed might have been transferred. That was one issue that we believe was against the manifest weight because Donald's anything. It was his opinion and nothing else. And my clients testified that they were promised the respective interest in Pura Vida. Thank you. Thank you. Anything, Justice Bond? Nothing further. Thank you. Well, thank you, counsel. Obviously, we will take this matter under advisement and we will issue an order in due course. You all have a great day.